FILED

February 2, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 11:00 AM



## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

**EMPLOYEE: KENNETH LAMB**

**EMPLOYER: CERTIFIED PAINTING, INC.**

**INSURANCE CARRIER: NONE**

**DOCKET #: 2014-02-0030**
**STATE FILE #: 85373-2014**
**DATE OF INJURY: October 21, 2014**

## EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by Mr. Kenneth Lamb (Mr. Lamb). Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court hereby finds as follows:

On December 18, 2014, Mr. Lamb filed a Request for Expedited Hearing with the Tennessee Court of Workers' Compensation Claims, Division of Workers' Compensation, pursuant to Tennessee Code Annotated section 50-6-239 to determine if the provision of temporary disability and medical benefits is appropriate.

## ANALYSIS

### Issues

1. Whether Mr. Lamb suffered an injury arising primarily out of and in the course and scope of his employment.
2. Whether Mr. Lamb is entitled to medical treatment for his alleged injury.
3. Whether Mr. Lamb is entitled to temporary total disability benefits, and if so, the amount.

### Evidence Submitted

The following exhibits were submitted for consideration:

### Technical Record

- Exhibit 1: Petition for Benefit Determination
- Exhibit 2: Dispute Certification Notice
- Exhibit 3: Request for Expedited Hearing

1

## Employee's Exhibits

- Exhibit 4: Check from Certified Painting, Inc., to Mr. Lamb
- Exhibit 5: Medical Records from: Community Health of East Tennessee (CHT); LaFollette Medical Center (LMC)
- Exhibit 6: Medical Bills from: CHT; LMC

## History of Claim

Mr. Lamb worked as a painter for Certified Painting, Inc. (CPI). CPI provided the supplies, except for paintbrushes. CPI paid Mr. Lamb with checks drawn from First Tennessee Bank.

On October 21, 2014, Mr. Lamb worked on the Twin Coves project. While painting a condo, his ladder buckled and he fell injuring his left leg. Mr. Lamb crawled to a location where he could be noticed. The owner of CPI saw Mr. Lamb, got his car, and brought it to him. Mr. Lamb drove home where he applied ice to his leg in an effort to decrease the swelling.

Mr. Lamb awoke the next morning with pain and swelling in his leg. He went to his personal medical provider, CHT. The nurse practitioner there, Hilda Newby, diagnosed Mr. Lamb with a sprain of the lateral collateral ligament of the left knee and recommended that he go to the emergency room. CHT charged Mr. Lamb $60.00 for the office visit.

Mr. Lamb went to the emergency room at LMC after leaving CHT. He saw Dr. Donald Gayda and PA-C Kimberly Johnson. Mr. Lamb reported his fall at work. Following diagnostic testing, Dr. Gayda diagnosed Mr. Lamb with a tibial plateau fracture and hemarthrosis (bleeding into joint spaces). Dr. Gayda recommended a wrap, application of ice, elevation of the foot, and no weight bearing. Dr. Gayda also recommended a follow-up with Mr. Lamb's private physician. LMC charged Mr. Lamb $468.18 for its treatment.

Though Mr. Lamb could not afford further treatment, he returned to CHT on November 7, 2014, and NP-Newby recommended an orthopedic evaluation. She also recommended that Mr. Lamb remain off work until an orthopedic doctor evaluated him and released him for work.

Mr. Lamb attempted contact with the owner of CPI following his injury without success. The owner of CPI left Mr. Lamb's last check in the amount of $375.00 at a Sherman Williams store. Mr. Lamb saved a copy of this check as proof of his earnings. Mr. Lamb testified he made $15.00 an hour and this check represented twenty-five (25) hours of work. He offered no other written proof of his earnings

## Mr. Lamb's Contentions

Mr. Lamb contends that he suffered an injury to his left leg on October 21, 2014. He contends that CPI owes him total disability benefits and medical benefits. He contends that he needs to be evaluated by an orthopedic physician because his leg continues to hurt and swell. Mr. Lamb further claims that he worked approximately forty (40) hours a week and earned fifteen dollars ($15.00)

2

dollars an hour, but that he has only his final paycheck as evidence of his wages. He asserts that he has not worked since the injury.

## Employer's Contentions

CPI neither responded to Mr. Lamb's Request for Expedited Hearing nor appeared at the Expedited Hearing.

## Findings of Fact and Conclusions of Law

### Standard Applied

When determining whether to award benefits, the Judge must decide whether the moving party is likely to succeed on the merits at trial given the information available. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W. 3d 209, 214 (Tenn. 2003). In a workers' compensation action, pursuant to Tennessee Code Annotated section 50-6-239(c)(6), the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence. The employee must show the injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13).

### Factual Findings

Mr. Lamb sustained an injury on October 21, 2014, while working for CPI, when he fell from a ladder while painting a condo. He suffered an acute fracture of his tibial plateau and hemarthrosis. Mr. Lamb has not worked since the injury, is currently under restrictions to be non-weight bearing, and cannot work until evaluated by an orthopedic physician. LMC and CHT charged Mr. Lamb a total of $528.18 for medcial treatment resulting from the October 21, 2014, work incident. Mr. Lamb's average weekly wage is $375.00, and his compensation rate is $250.00 per week.

### Application of Law to Facts

The first issue in this case is whether Mr. Lamb has presented sufficient evidence to prove he suffered a compensable injury. Tennessee Code Annotated Section 50-6-102(13) defines an injury as follows:

> "Injury" or "personal injury" mean an injury by accident, a mental injury, occupational disease including diseases of the heart, lung and hypertension, or cumulative trauma conditions including hearing loss, carpal tunnel syndrome or any other repetitive motion conditions, arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee; provided, that:
> (A)    An injury is "accidental only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of

3

occurrence, and shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment;

(B) An Injury "arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes;

(C) An injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing death, disablement or need for medical treatment, considering all causes.

Mr. Lamb specifically described the event that caused his acute injury. His providers confirmed his injury on the date in question. Sufficient evidence exists in the record to prove Mr. Lamb suffered an acute injury arising primarily out of and in the course and scope of his employment with CPI on October 21, 2014.

The second issue is whether Mr. Lamb satisfied his burden of proof to establish an entitlement to medical treatment for his injury. Since Mr. Lamb established that he suffered a compensable injury, Tennessee Code Annotated section 50-6-204(a)(1)(A) provides him an entitlement to medical benefits. Mr. Lamb sought medical treatment on his own because CPI refused to talk to him or provide medical treatment. An employee is justified in seeking medical treatment on his own when an employer fails or refuses to provide treatment. *Lambert v. Famous Hospitality*, 947 S.W.2d 852, 854 (Tenn. 1997) CPI shall reimburse Mr. Lamb for past medical treatment with LMC and CHT in the amount of $528.18. Because Mr. Lamb's providers made an orthopedic referral, CPI shall further provide Mr. Lamb with a panel of orthopedic physicians and schedule an appointment with the provider Mr. Lamb chooses.

The third issue is whether Mr. Lamb established an entitlement to temporary total disability benefits. An employee who cannot work temporarily because of a work injury is entitled to temporary total disability benefits, payable at two-thirds of an employee's average weekly wage. *See* Tenn. Code Ann. § 50-6-207(1)(a). Mr. Lamb proved that his providers recommended that he remain off work until an orthopedic doctor evaluates him. Accordingly, CPI shall pay Mr. Lamb temporary total disability from the date after his injury until present in the amount of $3,750.00. CPI shall continue payment of temporary total disability benefits until an orthopedic doctor evaluates him and address his work restrictions.

**IT IS, THEREFORE, ORDERED** as follows:

1. CPI shall provide Mr. Lamb with medical treatment for his injuries as required by Tennessee Code Annotated section 50-6-204 by providing Mr. Lamb with a panel of orthopedic physicians. CPI shall reimburse Mr. Lamb in the amount of $528.18 for past medical expenses

2. The amount of temporary disability benefit is $250.00 per week based on Mr. Lamb's average weekly wage of $375.00.

3. CPI shall past due temporary total disability benefits in the amount of $3,750.00 for the period of October 22, 2014 to February 2, 2015.

4. Employer shall continue to pay to Mr. Lamb temporary disability benefits in regular intervals until Mr. Lamb is no longer eligible for those benefits by reaching maximum medical improvement, by returning to work, or by release without restrictions by the authorized treating physician. CPI shall notify the Division and Mr. Lamb in writing immediately by filing Form C-26 of Employer's intent to terminate temporary disability benefits, citing the basis for the termination.

5. This matter is set for Initial Hearing on March 13, 2015, at 10:00 a.m.

6. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Division by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

7. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 2nd day of February 2015.**

_____
**Brian K. Addington**
**Workers' Compensation Judge**

Initial Hearing:

An Initial Hearing has been set with Judge Brian K. Addington, Court of Workers Compensation. You must call 865-594-6538 or toll free at 855-543-5044 to participate in the Initial Hearing.

Please Note:  You must call in on the scheduled date/time to participate.  Failure to call in may result in a determination of the issues without your further participation. All conferences are set using

Eastern Time (ET).

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal".

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 2nd day of February, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| **Kenneth Lamb** | x | x | | | | 173 Rainbow LN, LaFollette, TN 37766 |
| **CPI** | x | x | | | | 2129 Cold Dr. N.E., Knoxville, TN 37918 |

Penny Shrum
**Penny Shrum**
**Clerk of the Court**